WHITE, Collector of Internal Revenue, v. ATKINS.

No. 2860.

Circuit Court of Appeals, First Circuit.

March 14, 1934.

MORTON, Circuit Judge, dissenting.

—————◇—————

J. P. Jackson, Sp. Asst. to Atty. Gen. (Sewall Key, F. J. Wideman, and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Edward C. Thayer, of Boston, Mass. (Earle W. Carr and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a judgment of the District Court of Massachusetts involving the construction of sections 21, 22, 23, and 101 of the Revenue Act of 1928 (26 USCA §§ 2021–2023, 2101). Sections 21, 22, and 23 provide for the method of determining the net income of an individual as a basis for assessing his income tax according to the normal and surtax rates provided in the act; while section 101 provides, at the option of the taxpayer, for a separation of the taxpayer's capital net gain realized from the sale or exchange of capital assets, from his net income from other sources, and for the assessment of a tax on his capital net gain at a different rate than the normal or surtax rates.

The taxpayer in 1929 had a total net income of $118,743.40, computed in accordance with the provisions of sections 21, 22, and 23, $23,397.50 of which was due to capital net gains. During the year she had made contributions to charity to an amount in excess of 15 per cent. of her net income of $118,743.40, and in her return deducted $17,811.51 under section 23 (n) (26 USCA § 2023 (n), and elected to be taxed at 12½ per cent. on her capital net gain under section 101 (26 USCA § 2101).

The appellant collected of the taxpayer a tax computed by allowing a deduction for charitable contributions of 15 per cent. of her net income less her capital net gain, or a deduction of $14,301.88, which resulted in an increase in her tax of $782.55. The taxpayer paid and filed a claim for a refund which was disallowed by the Commissioner, and the taxpayer brought this action to recover the sum of $782.55, with interest, amounting to $887.14.

The District Court sustained the taxpayer's contention and ordered judgment for the taxpayer.

The method of determining an individual's net income has remained substantially the same since the first income tax act was enacted, viz., by taking the taxpayer's gross income from all sources and deducting certain items specified in the acts. In the 1917 Act, § 1201 (40 Stat. 330), Congress first provided that an individual in determining his net income might deduct from his gross income all contributions for charitable purposes, but not in excess of 15 per cent. of his net income, before allowing such deduction. The purpose of this amendment was to encourage such contributions. Its meaning was clear. The substance of this provision has been retained in every Revenue Act since 1917, and is found in section 23 (n) of the 1928 Act (26 USCA § 2023 (n).

The provision for separating capital net gain from a taxpayer's net income and, at the option of the taxpayer, the assessment of a flat rate of 12½ per cent. on the former, instead of the surtax rates provided in the act, first appears in section 206 of the Revenue Act of 1921 (42 Stat. 232), and was added to that act in order to encourage more activity in the transfers of capital assets. Burnet v. Harmel, 287 U. S. 103, 106, 53 S. Ct. 74, 77 L. Ed. 199. In connection with the assessment of the capital net gains tax, Congress in

section 206 defined "capital gain," "capital loss," "capital deduction," and "capital net gain." Capital net gain was declared to mean the excess of the total or gross capital gain, over the sum of the capital deductions and capital losses. No provisions for any form of special assessment in case of a capital net loss were contained in the 1921 Act.

It is obvious that, if section 206 of the 1921 Act was invoked by the taxpayer, a new base was necessary on which the normal and surtax should be computed, and the term "ordinary net income" was adopted by Congress. "Ordinary net income," as defined in section 206 of the 1921 Act, means the taxpayer's "net income computed in accordance with the provisions of the Act," which can only refer to sections 212–214 of the 1921 Act (42 Stat. 237–242), "after excluding all items of capital gain, capital loss, and capital deductions"; or, in other words, a taxpayer's "ordinary net income" under this act was his "net income" from all other sources than the sale or exchange of capital assets, since section 206 was concerned only with capital net gains.

Ordinary net income, therefore, as defined in section 206 of the 1921 Act, is something different from net income as determined in sections 212–214 of that Act. Net income is what is left of one's gross income from all sources, including capital gains, after making the deductions permitted under the acts, which include capital losses and capital deductions. Ordinary net income under the 1921 Act is net income computed in accordance with sections 212–214 after excluding any capital net gain resulting from the sale or exchange of capital assets. It is significant, we think, that no reference to ordinary net income is found in section 214 (a) (11) of the 1921 Act (42 Stat. 241), or in section 23 (n) of the 1928 and 1932 Acts, 26 USCA § 2023 (n), 3023 (n), as the base for determining the amount of the deduction for charitable contributions.

█ There is nothing to indicate that Congress by the enactment of this provision for taxing capital net gains in the 1921 Act, in order to encourage greater activity in the sale of capital assets, intended thereby in any way to change the amount deductible for charitable contributions by limiting them to 15 per cent. of the individual's "ordinary net income" instead of his net income as hitherto. The result is inconsistent with the purpose for which the deduction was allowed in the 1917 Act. If Congress had so intended by the provision for a flat rate assessment on capital gains, it would, we think, have made its intent clear. It has never done so.

Under the provisions of section 208 (c) of the 1924 Act (26 USCA § 939 note) for determining an individual's tax in case there is a capital net loss from the sale or exchange of capital assets, the individual's normal and surtax, as in the case of capital net gain, is first computed on his "ordinary net income," and is then reduced by deducting 12½ per cent. of his capital net loss. There is no reason to think Congress by the same language intended anything different by the words "ordinary net income" in section 208 of the 1924 Act (26 USCA § 939 note) than in section 206 of the 1921 Act. It is the taxpayer's net income in either case from other sources than the sale or exchange of capital assets, but found by first determining "net income" as provided in sections 212–214, and then deducting capital net gains, or adding capital net losses.

The provision in case of capital net loss was not made optional with the taxpayer, but was allowed only when the tax computed under section 208 of the 1924 Act was greater than that computed on the "net income" as determined under sections 210–214 of the Act (26 USCA §§ 951, 952 notes, 953–955 and noted). The objective of section 206 of the 1921 Act, and section 208 (c) of the 1924 Act (26 USCA § 939 note), is entirely different. In the former, presumably, if the taxpayer exercises his option, the tax is less, if the flat rate is applied to the capital net gain; in the latter, if applicable, the tax is increased.

We find no logical ground, derived from the history or prior construction of these acts, for holding that "ordinary net income" as defined in section 101 of the 1928 Act (26 USCA § 2101) is the base for limiting the deduction of contributions for charitable purposes under section 23 (n), 26 USCA § 2023 (n).

These sections from 1921 to 1931 were construed by the Treasury Department in accordance with the taxpayer's contention. The 1924, 1926, 1928, and 1932 Acts were all passed by Congress with this construction, as a background, and indicate no change in the construction of these sections. In neither of these acts is there any reference to "ordinary net income," as the base for determining the allowable deductions from gross income of charitable contributions. In all the Revenue Acts deductions of charitable contributions are expressly based on net income as determined in the sections relating to the method of determining net income.

Again, in the 1932 Act, section 120 (26 USCA § 3120), Congress provided that in case an individual's contributions to charita-

ble purposes, plus his income, war profits, and excess taxes in each of the ten preceding taxable years, exceeded 90 per cent. of his net income for each year, computed without the benefit of section 23 (n), 26 USCA § 3023 (n), then the deduction of contributions for charitable purposes is not limited to 15 per cent. Here, again, there is no reference to "ordinary net income" as a basis for such deductions.

It is made clear in the 1932 Act that the provisions for the assessment of taxes when capital net gains and losses are involved are entirely separate from, and have no relation to, sections 21, 22, and 23 of part 2 of that Act (26 USCA § 3021-3023). Subtitle C (26 USCA § 3101 et seq.), under which the provisions relating to capital net gains and capital net losses are found, provides that these provisions are merely supplementary to subtitle B in part 1 (26 USCA § 3011 et seq.) which relates solely to rates and not to the manner of determining net income.

In November, 1931, in the case of Hallie D. Elkins v. Commissioner, 24 B. T. A. 572, a single member of the Board of Tax Appeals erroneously, we think, held in the case of a capital loss that the limitation of the deductions for charitable purposes was 15 per cent. of ordinary net income as defined in section 101.

This decision apparently did not convince the Treasury Department that it had erred in its construction of these sections, and it yielded only to the extent that it would preserve the government's rights by following the construction in the Elkins Case. For a year or more thereafter single members of the Board followed the Elkins Case. In the case of capital net losses, see Charles J. Livingood, Ex'r v. Commissioner, 25 B. T. A. 585; and in case of capital net gains, Harbison v. Commissioner, 26 B. T. A. 896, Mary Colgate v. Commissioner, 27 B. T. A. 506, and Bliss v. Commissioner, 27 B. T. A. 205.

In 1933, however, on a review by the full Board, in the case of Straus v. Commissioner, 27 B. T. A. 1116, the Board reversed the ruling of the single members in the previous cases and held that in case of a capital net gain the basis for limiting deductions for charitable contributions was net income as defined in sections 21, 22, and 23 of the 1928 Act, and not ordinary net income as defined in section 101. This ruling was followed in two memorandum decisions Leslie T. Iglehart v. Com'r, 27 B. T. A. 1426, and Robinette v. Commissioner, 27 B. T. A. 1426.

The Bliss Case, supra, has been recently overruled in the Circuit Court of Appeals for the Second Circuit, January 8, 1934. 68 F. (2d) 890. A similar construction was followed in the decision by the District Court in this case, and in the case of Blow et al., Adm'rs v. United States, in the Northern District of Illinois, 5 F. Supp. 737, see Fed. Tax Service, vol. 3, p. 9275.

As the matter now stands, the Treasury Department for ten years following the 1921 Act held to the construction contended for by the taxpayer in this case, and approved by the District Court. Its first regulation relating to these provisions was issued in 1924, but referred to both the 1921 and 1924 Acts. Such consistency in the construction of a statute by the Department and the subsequent enactment by Congress of four Revenue Acts without indicating any change in the construction, is entitled to weight in determining the intent of Congress, as the Supreme Court held in Brewster v. Gage, Collector, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457.

It has also been sustained in all the recent decisions by the Board of Tax Appeals after review by a full Board in the Straus Case, supra, and in every case, as far as we are advised, that has been heard by any court. This construction also has the approval of the leading commentators and text-book writers on federal income tax law. Joseph J. Klein, on Federal Income Taxation, p. 754; Robert H. Montgomery's Federal Tax Handbook.

Such contrary views as have been expressed seem to us to misconstrue the language of subparagraph (c) (7) of section 101, 26 USCA § 2101 (c) (7) defining "ordinary net income," and either treat the words "computed in accordance with the provisions of this title" as modifying the words "ordinary net income," when they clearly, we think, modify the words "net income," as there is no provision in sections 21, 22, and 23, or other "provisions of this title," for computing "ordinary net income"; or the contrary views lose sight of the fact that it is "ordinary net income" that is being defined in subparagraph (c) (7) of section 101 for the purpose of assessing a capital net gain or capital net loss tax, and not a new definition of net income for determining the allowable deductions for charitable contributions under section 23 (n). If the words "computed in accordance with the provisions of this title" modified "ordinary net income," the words "means the net income" are superfluous. Congress might have provided that a taxpayer's "ordinary net in-

come" should be "computed in accordance with the provisions of this title, after excluding all items of capital gains, capital losses, and capital deductions," but it did not. In fact, in some cases it may be necessary to compute first the net income in accordance with sections 21, 22, and 23, since otherwise it might not appear whether section 101 (b) can be applied until the results of the two methods of computing the tax are compared.

The judgment of the District Court is affirmed, with interest.

MORTON, Circuit Judge (dissenting).

I regret that I am unable to agree. The Revenue Act of 1921 (42 Stat. 227) made a rather basic change in individual income taxes. It introduced a distinction, not theretofore recognized in our income taxation, between a profit or a loss on capital assets, which is really not income in the usual sense of the word, and ordinary income. As to capital losses, it seems clear that, under the new provisions, they are, in effect, an additional deduction, subtracted from the ordinary income after it has been computed without including capital transactions; the reasoning on this point of the opinion in the Elkins Case, 24 B. T. A. 572, 576, seems to me unanswerable. It follows that the authorized deduction for charitable contributions is computed without regard to capital losses. "Ordinary net income" in section 101 (b) of 1928 (26 USCA § 2101 (b) can hardly have any other meaning. It cannot be that capital losses are to be taken as a deduction in computing ordinary net income, and again deducted to the extent of 12½ per cent. from the income so found. Moreover, under the contrary view, the result of a capital loss might be that a taxpayer, who had ordinary income and made contributions up to 15 per cent. of it, would not be permitted to deduct them for purposes of taxation; a conclusion which seems at variance with the evident intent of the statute.

Capital gains are treated by the statute in a somewhat different manner. The taxpayer is given an election whether to carry them into his ordinary income and have them taxed in the old way, or to segregate them and pay a separate tax of 12½ per cent. on that item alone. Where the latter course is followed, as was done in this case, I think the intention was that capital gains should be treated, mutatis mutandis, in the same way as capital losses, i. e., that the ordinary net income should be computed without regard to them, and that, after it had been so computed, and after all deductions, including charitable contributions, had been made, and after the tax on that basis had been stated, the amount thereof should be increased by 12½ per cent. of the capital gains. As was said by the Board of Tax Appeals, "The taxpayer can not exclude capital gain from gross income for the purpose of getting the benefit of the lower rate of tax thereon, and at the same time include capital gain in gross income for the sole purpose of computing the maximum deduction for contributions." Bliss v. Com'r, 27 B. T. A. 205, at page 208.

The statute seems to me so clear when read without a magnifying glass, that I am not convinced to the contrary by the refinement of analysis to which it has been subjected. There is authority for the broader approach to such questions. Heydenfeldt v. Daney Gold, etc., Mining Co., 93 U. S. 634, 638, 23 L. Ed. 995; Johnson v. Southern Pac. Co., 196 U. S. 1, 14, 25 S. Ct. 158, 49 L. Ed. 363; Pirie v. Chicago, etc., Co., 182 U. S. 438, 451, 21 S. Ct. 906, 45 L. Ed. 1171.