## PLEASANTS v. UNITED STATES.
No. 43278.

Court of Claims.
April 4, 1938.

966

Frederick Schwertner, of Washington, D. C. (Delafield, Thorne & Marsh, of New York City, Lowenhaupt, Waite & Stolar, of St. Louis, Mo., George H. Warrington, of Cincinnati, Ohio, and Wright & Rundle, of Pittsburgh, Pa., on the brief), for plaintiff.

Frederick E. S. Morrison, of Philadelphia, Pa. (Drinker, Biddle & Reath, of Philadelphia, Pa., on the brief), amicus curiæ.

John A. Rees, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

•All of the sections hereinafter mentioned are found in the Revenue Act of 1932, unless otherwise stated. Section 23 (n), 26 U.S.C.A. § 23(n) and note, relating to charitable contributions, which is in substance the same as the provisions covering that subject incorporated in all the revenue acts beginning with section 1201(2) of the Revenue Act of October 3, 1917, 40 Stat. 330 provides as follows:

"In computing net income there shall be allowed as deductions: * * *

"(n) Charitable and Other Contributions.—In the case of an individual, contributions or gifts made within the taxable year to or for the use of: * * *. (2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * to an amount which in all the above cases combined does not exceed 15 per centum

of the taxpayer's net income as computed without the benefit of this subsection."

Section 21, 26 U.S.C.A. § 21 and note, provides that the " 'Net income' means the gross income computed under section 22, less the deductions allowed by section 23." Sections 11 and 12 relating to the tax on individuals impose a normal tax of 4 and 8 per cent. and a surtax ranging from 1 to 40 per cent. "upon the net income of every individual."

The question in this case is whether "the taxpayer's net income" mentioned in section 23(n), quoted above, means the net income which the statute subjects to the tax imposed by sections 11 and 12—that is, the net amount upon which the taxpayer is liable for a tax, except for its reduction for charitable contributions—or whether "the taxpayer's net income," which section 23(n) makes the base for the calculation of the allowable deductions for charitable contributions, means the taxpayer's gross income less the deductions allowed by section 23 (other than charitable contributions) *plus* the deduction of the capital net loss which is not a permissible or allowable deduction under section 23 or any other section in determining "the net income" to be subjected to the tax imposed by sections 11 and 12, except under certain circumstances not material here, but which will hereinafter be referred to. It is our opinion that the net income specified in section 23(n) as the base for the calculation of the deduction for charitable contributions is, and was, intended by Congress to be the net amount upon which the taxpayer is taxable under sections 11 and 12—i. e., $94,963.52. This was plaintiff's gross income less all permissible deductions. Where there is a "capital net loss" as defined by the statute, such loss, by express provision of the statute, is excluded and denied as a deduction in determining the net income to be subjected to the tax imposed. See section 101(c) (7), 26 U.S.C.A. § 101 note. The pertinent sections of the Revenue Act of 1932, so far as material here, are as follows:

"§ 11. Normal tax on individuals. There shall be levied, collected, and paid for each taxable year upon the *net income* of every individual a normal tax equal to the sum of the following." 26 U.S.C.A. § 11 note.

"§ 12. Surtax on individuals. (a) Rates of Surtax. There shall be levied, collected, and paid for each taxable year upon the *net income* of every individual a surtax as follows." 26 U.S.C.A. § 12 note.

"§ 21. Net income. 'Net income' means the gross income computed under section 22, less the deductions *allowed* by section 23." 26 U.S.C.A. § 21 and note.

"§ 22. Gross income. (a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property; * * * also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." 26 U.S.C.A. § 22 and note.

"§ 23. Deductions from gross income. In computing *net income* there shall be *allowed* as deductions: (a) Expenses. * * * (b) Interest. * * * (c) Taxes generally. * * * (d) Taxes of shareholder paid by corporation. * * * (e) Losses by Individuals. [Subject to the limitations provided in subsection (r) of this section] in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise * * * (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * * (j) Bad Debts. * * * (k) Depreciation. * * * (l) Depletion. * * * (n) Charitable and other contributions. In the case of an individual, contributions or gifts made within the taxable year to or for the use of: * * * (2) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * to an amount which * * * does not exceed 15 per centum of the taxpayer's *net income* as computed without the benefit of this subsection." 26 U.S.C.A. § 23 and note.

"§ 101. Capital Net Gains and Losses. (a) Tax in Case of Capital Net Gain. In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the

basis of the ordinary net income at the rates and in the manner as if this section had not been .enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

"(b) Tax in Case of Capital Net Loss. In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall· be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the 'ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax· of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

"(c) Definitions. For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

"(2) 'Capital loss' means deductible loss resulting from the sale ·or exchange of capital assets.

"(3) 'Capital deductions' means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year.

"(4) 'Ordinary deductions' means the deductions allowed by section 23 other than capital losses and capital deductions.

"(5) 'Capital net gain' means the excess of the total·amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains.

"(6) 'Capital net loss' means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

"(7) 'Ordinary net income' means the *net income,* computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions.

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by .the taxpayer primarily for sale in the course of his trade or business." 26 U.S.C.A. § 101 note. (Italics supplied.)

■ The Commissioner of Internal Revenue held in his construction of sections 23(n) and 101 which, so far as· this question is concerned, are the same as the related sections of the Revenue Acts of 1924, §§ 214, 208, 43 Stat. 269, 262, 1926, §§ 214, 208, 44 Stat. 26, 19, and 1928, § 23(n), 101, 26 U.S.C.A. § 23(n) and note, § 101 note, that if a taxpayer sustained a capital net loss which by express provision of the statute could not be taken as a deduction in computing taxable net income, such capital net loss must nevertheless be deducted from the net income which the statute specified should be subjected to the normal and surtaxes imposed by sections 11 and 12 in arriving at the net income for the purpose of applying the 15 per cent. limitation prescribed by section 23(n) on the deduction for charitable contributions. In the case at bar this method wiped out all of the taxpayer's income and showed a net loss of $59,958.46; however, for the purpose of the tax, plaintiff had a *net income* of $94,963.52. This method of determining whether the taxpayer is entitled to a deduction for charitable contributions is theoretical, and we think it is not authorized by either the language or the intent of the statute. In the enactment of the provisions with reference to capital net gains and capital net losses Congress did not in any way evidence a purpose to take away or to limit the right of an individual taxpayer to deduct from net income, subject to tax, his charitable contributions in an amount not exceeding 15 per cent. of such net income. It would require language so clear as to leave room for no other reasonable construction in order to justify the belief that Congress intended that a loss which it specifically excluded and denied to a taxpayer as a deduction in determining the net income upon which he is required to pay a tax must, nevertheless, be deducted from such taxable net income for the purpose of determining whether he had a net income from which he could take a deduction for charitable contributions.

The capital net loss provisions were originally enacted in the Revenue Act of 1924. A capital net loss is the net loss sustained by a taxpayer in the sale of investment property held for more than two years. The statute provides two methods of computing the tax to be collected in the case of a taxpayer who has sustained a capital net loss and the method which will produce the higher tax must be followed under the plain mandate of the statute. Section 101(b), 26 U.S.C.A. § 101(b) note, provides that the tax shall first be computed upon the basis of ordinary net income, which is determined without allowing any deduction in respect of the capital net loss, at the rates prescribed in other sections of the act, and that the total tax due by the taxpayer shall be the tax thus determined less a credit against such tax of 12½ per cent. of the capital net loss. That section further provides that in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of that section. Under the first method of computing the net income and the tax, the capital net loss is *not allowed* as a deduction, but is used as a base for calculating the credit against the total tax. Under the second method, if it produces a higher tax, the capital net loss is, by the statute, made a *permissible deduction* in determining net income, and the tax upon such net income is computed at the rate specified in sections 11 and 12, and no credit against the resulting tax is made. This is the only instance where the statute authorizes a deduction of the capital net loss in determining taxable net income. In either case the taxpayer is taxed upon his "net income" as defined by the statute. Under the first method, in a case like the one under consideration, the Commissioner computes a tax upon a statutory *net income* but denies the taxpayer any deduction for charitable contributions. Under the second method, the Commissioner likewise determines and computes the tax at the rates specified in the statute upon the statutory *net income,* and allows the full deduction for charitable contributions to the extent of the limitation specified in section 23(n). We can find no justification in the language of the statute for the denial of a deduction for charitable contributions under the first method. The statute is not ambiguous. "Net income" is a statutory concept, and in both of the cases just mentioned the taxes are computed upon *net income,* and it seems clear to us that in section 23(n), relating to charitable contributions, the Congress did not use the term "net income" in any different sense.

Deductions may be granted or withheld by Congress at its pleasure, and when the statute denies to a taxpayer the right to take a certain deduction in determining his net income, such deduction may not be made in any case, unless it is clearly authorized by the language of the statute, or shown to be within the manifest intention of Congress, neither of which do we find in the present case. Moreover, Congress has specified the only instance in which a capital net loss is a permissible deduction in determining the statutory net income subject to tax, and no other instance when such a loss may be deducted may be read into the statute by administrative or judicial construction, or upon any theory of supposed consistency. Consistency in theory is not necessary in matters of taxation and is not always found in taxing statutes. As was pointed out by the court in Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 20, 79 L.Ed. 246, 97 A.L.R. 207, a "capital net gain" is simply a part of the "net income" as defined by the statute and the mere fact that Congress chose to tax that part of the net income at a fixed rate of 12½ per cent., regardless of the amount thereof, made it none the less a part of the "net income"—that is, the base for the calculation of the tax to be paid by the taxpayer as contemplated and intended by the term "net income" as used in section 23 (n). By the same process of reasoning we think it is clear that since "net income" is always a statutory concept, a capital net loss, which is not a permissible or allowable deduction under section 23 in determining the net income of a taxpayer for the purpose of the tax imposed by sections 11 and 12—that is, the base for the calculation of the tax before deducting charitable contributions—may not be deducted from such net income for the purpose of denying altogether or materially reducing the deduction which Congress since October 3, 1917, 40 Stat. 306, has consistently given to individual taxpayers for charitable contributions. Any other construction would, we think, disregard legislative history of persuasive force with reference to the deduction of charitable contributions; it would adopt a distorted rather than the ordinary meaning of the language of the

several provisions of section 101, and would tend to defeat rather than further the purpose of the act with reference to charitable contributions. In Howard Heinz v. Commissioner, 34 B.T.A. 885, the Board, at page 900, stated as follows: "In the instant case it will be seen that the capital loss provision indirectly works to the petitioner's advantage, when read in conjunction with the provision for deducting charitable contributions, for while the former section [net loss section 101] limits the amount of losses to the petitioner's disadvantage, it increases the amount of his total net income, and to that extent, therefore, enlarges the charitable deduction which is measured by a percentage of that income. The ameliorative purpose of the two sections is therefore retained here. And there is nothing in the Bliss decision which warrants going farther."

The exclusion of the capital net loss as required by the statute without question serves to increase the amount of a taxpayer's total net income and, likewise, to increase his tax and to enlarge the base for the calculation of the deduction for charitable contributions which is limited to 15 per cent. of that net income. Charitable contributions to the extent of 15 per cent. of the net income subject to tax have been allowed by Congress as deductions from taxable net income—the base for the calculation of the tax—in every revenue act since the Act of 1916, 39 Stat. 756. If there were doubt as to the connotation of the term "net income," as used in section 23(n), or another meaning other than net income subject to the tax imposed by sections 11 and 12 might be adopted, "the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer." Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 561, 52 S.Ct. 211, 214, 76 L.Ed. 484. Beginning with section 214(a) (10) of the Revenue Act of 1924, 43 Stat. 269, charitable contributions have been allowed as deductions from net income without limitation where a taxpayer for the current taxable year, and in each of the preceding ten years, has contributed to charity over 90 per cent. of his net income in each such year (after deducting income, war profits, and excess profits taxes paid). See section 214(a) (10), Revenue Acts of 1924 and 1926, 43 Stat. 269, 44 Stat. 26, and section 120 of the Acts of 1928 and 1932, 26 U.S. C.A. § 120 and note. In such case it is obvious that on no theory could a capital net loss be deducted from ordinary net income for the purpose of reducing or entirely denying the deduction for the charitable contribution expressly given by the statute, and the defendant does not contend that under such circumstances the capital net loss could be deducted. Under the defendant's theory, a taxpayer who contributes over 90 per cent. of his annual net income to charity over a period of ten years is entitled, when he has a capital net loss, to deduct the whole amount of his contributions from ordinary net income undiminished by such loss, but a taxpayer who has contributed less than 90 per cent. of his net income to charity over a period of years and in the taxable year contributes a substantial amount, or even more than 90 per cent. to charity, may not, where the 15 per cent. limitation applies, obtain any deduction for such charitable contributions where the capital net loss exceeds the taxable net income, although such taxpayer is required by the statute to pay a substantial tax upon a definite statutory net income. It seems manifest that Congress did not intend such an unfair result, nor do we think it is required by the language of the statute. Charitable contributions are "ordinary deductions" under section 23 and in the case of a taxpayer having a capital net loss his *net income* as defined by section 23(n) for the purpose of computing the allowable deduction for charitable contributions is "ordinary net income," which is the base for the calculation of the tax.

The fact that Congress provided in section 101(b) that 12½ per cent. of a capital net loss should constitute a credit against the total tax computed upon the taxpayer's net income does not require the deduction in addition of the entire capital net loss from taxable net income for the purpose of measuring the amount upon which the deduction for charitable contributions shall be calculated. An amount so determined is nowhere mentioned or defined in the statute, and it can never constitute the base for the calculation of the tax, except when the deduction of the capital net loss in its entirety from ordinary net income produces a greater tax. In such case the difference between the ordinary net income and the capital net loss is the statutory "net income"—the base for the calculation of the tax—from which the deduction of the charitable contributions within the limit specified is to be made. Had Congress intended that this method be followed in every in-

stance in determining the net income to be used as the base for the calculation of the 15 per cent. limitation for charitable contributions, we think it would have used language sufficiently clear not to be misunderstood. In the Revenue Act of 1924, Congress enacted new provisions with reference to charitable contributions and capital net losses. With respect to the former it enlarged the deduction so as to encourage such contributions, and with respect to the latter it limited the right of the taxpayer to deduct a capital net loss. We think, also, that if Congress had intended that the net income should be taxed at the rates specified in sections 11 and 12, but reduced in amount for the purpose of calculation of the 15 per cent. limitation on the deduction of charitable contributions because a credit of 12½ per cent. of the capital net loss was allowed as a credit against the resultant tax, some provision for such reduction would have been made. When a taxpayer has a capital net loss his statutory net income is his "ordinary net income," and this is made clear by section 101(c) (7), 26 U.S.C.A. § 101 note. The Board of Tax Appeals so held in Elkins v. Commissioner, 24 B.T.A. 572, decided November 3, 1931, and Livingood, Executor of Emery, v. Commissioner, 25 B.T.A. 585, decided February 23, 1932. In our opinion, those decisions were correct. In Helvering v. Bliss, supra, the Supreme Court said:

"If the meaning of the act were doubtful, we should still reach the same conclusion. The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed."

■■ The force of that statement when applied to the instant case is apparent. The liberalization of the law in the taxpayer's favor by permitting him to deduct charitable contributions to the extent of 15 per cent. of his net income subject to tax as determined before any allowance for charitable contributions is not to be narrowly construed. We have had occasion heretofore to point out that the beneficent provisions of remedial statutes are not to be thwarted by nice technicalities not within the minds of the legislators. Siegel v. United States, 18 F.Supp. 771, 84 Ct.Cl. 551. Under these circumstances we should not depart from the plain and ordinary meaning of section 23(n) in an effort to bring about a uniformity by deducting capital net losses from statutory net income if capital net gains are to be treated as a part of the statutory net income, which uniformity it is claimed Congress intended, but failed to express. We are of opinion that the term "net income," as used in section 23(n), was used in the same sense in which it has always been used in other statutes since the Revenue Act of 1916, and, as we shall hereinafter attempt to show, we think this interpretation is consistent with all the provisions of section 101.

■ The Revenue Act of October 3, 1917 (H.R. 4280), c. 63, 40 Stat. 300, 301, 330, as it was passed by the House of Representatives, contained no provision with reference to deductions for charitable contributions. The bill was amended by the Senate and "Title XII.—Income Tax Amendments" was inserted and in section 1201(2) thereof, section 5 of the Revenue Act of 1916 was amended so as to provide for a deduction by individuals of charitable contributions to the extent of "fifteen per centum of the taxpayer's *taxable* net income as computed without the benefit of this paragraph." (Italics supplied.) See Conference Report on the Revenue Act of 1917, Senate Document 115, 65th Congress, First Session, p. 2. In section 214(a) (11) of the Revenue Act of 1918 approved February 24, 1919, 40 Stat. 1057, 1066–1068, relating to deductions for charitable contributions, and corresponding sections of all subsequent revenue acts, the word "taxable," as used in section 1201, supra, of the Revenue Act of 1917 was left out for the obvious reason, it seems to us, that the word was surplusage and that "the taxpayer's net income," as used in such later acts, meant, and was intended to mean, "the taxpayer's taxable net income." The provision for the deduction of charitable contributions was consistently so construed until the capital net loss provisions of section 208 of the Revenue Act of 1924, 43 Stat. 262, were enacted. In our opinion, section 208, which denied a deduction of a capital net loss in determining the taxpayer's taxable net income, did not and was not intended to change the original meaning of the words "the taxpayer's net income" as used in the section relating to the deduction for charitable contributions.

There is nothing in the history of the legislation denying the deduction of a capital net loss in the determination of taxable net income showing any intent on the part

of Congress to reduce or take away the deduction for charitable contributions. The history of the legislation with reference to deductions for charitable contributions clearly shows that Congress over a long period of years has intended that this deduction should be allowed whenever an individual taxpayer has a statutory net income upon which a tax is to be computed and collected, and that such deduction is to be taken from that net income. The capital net loss provision was enacted by reason of the practice of may taxpayers when they had a large ordinary net income to sell investment property on which a loss instead of a gain would be realized with the view to reducing taxes by offsetting such capital net losses against gross income from all sources. As a result the government was being deprived of revenue because capital net gains were taxable only at 12½ per cent. regardless of the amount, and capital net losses were deductible prior to 1924 from ordinary gross income in their entirety. Neither the statutes nor the committee reports contain any suggestion that the deduction for charitable contributions was to be altered or disturbed through the medium of the capital net loss provision. The declared purpose of the Congress in permitting a deduction for charitable contributions over a long period of years was to encourage such donations. Such deduction for donations necessarily served to reduce taxable income and, hence, to reduce taxes prior to the enactment of the net loss provisions, but such deductions were allowed from motives of public policy.

For the reasons hereinbefore stated, we are unable to concur in the decisions in Lockhart v. Commissioner, 32 B.T.A. 732, decided June 10, 1935, affirmed, 3 Cir., 89 F. 2d 143; Avery v. Commissioner, 32 B.T.A. 948, decided July 16, 1935, affirmed, 7th Cir., 84 F.2d 905; Heinz v. Commissioner, 34 B. T.A. 885, decided August 7, 1936, affirmed, 3 Cir., February 11, 1938, 94 F.2d, 832; Nippert et al. v. Commissioner, 32 B.T.A. 892; Hill v. Commissioner, 33 B.T.A. 891; Zimmermann et al. v. Commissioner, 36 B. T.A. 279; Wollman v. Commissioner, and Johnston v. Commissioner, decided by memorandum opinions in February 1936 and April 1937, respectively, all on the authority of Lockhart v. Commissioner, supra, and G. C. M. 14030, XIII-2 C. B. 135. The facts stipulated in the Heinz and Lockhart Cases are confusing. In the former the taxpayer stipulated that his *taxable net income* for 1931, as reflected in the deficiency notice, was $186,879.09, when, as a matter of fact, his true taxable net income was his "ordinary net income" of $375,844.65 and a like stipulation of fact was made with reference to the year 1932. In the latter case it was stipulated that the taxable net income for 1929 was $911,599.10, whereas the true taxable net income was the ordinary net income of $966,467.20. It seems clear that the Commissioner cannot treat a capital net loss as a part of the *taxable net income*. All of the decisions mentioned, beginning with the case of Lockhart v. Commissioner, supra, held that a capital net loss, although not a permissible deduction under section 23 for the purpose of determining net income subject to the tax imposed by sections 11 and 12, might, nevertheless, be deducted from such net income for the purpose of determining the amount on which the 15 per cent. limitation for charitable contributions was to be computed on the ground that this conclusion was required by the opinion of the Supreme Court in Helvering v. Bliss, supra. In the Lockhart Case, the Board of Tax Appeals and the Circuit Court of Appeals for the Third Circuit appear to have attached considerable importance to footnote 2 to the opinion of the Supreme Court in the Bliss Case, 293 U.S., 144, at page 146, 55 S.Ct. 17, 18, 79 L.Ed. 246, 97 A.L.R. 207; but that footnote was not inserted as a part of the opinion of the court to the effect that a capital net gain was a part of the statutory net income —the base for the calculation of the tax— nor did it follow any reference in the opinion of the court to the capital net loss provisions. This footnote followed the statement of facts involved in the case before the court, and specifically the concluding sentence in such statement that "the Board of Tax Appeals sustained the Commissioner [holding that a capital net gain was not a part of the net income within the meaning of section (23(n) 26 U.S.C.A. § 23 (n) and note], but the Circuit Court of Appeals, by a divided court, reversed the Board." We do not think that the reference in that footnote to the decisions of the Board in Elkins v. Commissioner, supra, and Livingood v. Commissioner, supra, was either a holding by the court that those decisions, which involved a capital net loss, were erroneous, or that they had been overruled by the Board in Straus v. Commissioner, 27 B.T.A. 1116. In the Straus Case the Board specifically stated that it was not passing upon the question whether

its decision in that case affected in any way its previous holdings in the Elkins and Livingood Cases.

The Board and the Circuit Court of Appeals in the Lockhart and Heinz Cases held that under the decision of the Supreme Court in the Bliss Case, net income as defined by section 21, and computed under sections 22 and 23, Revenue Act of 1928, 26 U.S.C.A. § 21 and §§ 22, 23 and notes, not only includes capital gains, but is to be determined after the deduction of capital losses, since the latter are losses deductible from gross income under section 23(e), 26 U.S.C.A. § 23(e) note. The reasons which we have hereinbefore mentioned lead us to the conclusion that capital net losses are not deductible under section 23(e) for any purpose, except when the allowance of a capital net loss as an ordinary deduction would produce a higher tax than its exclusion as a deduction and an allowance of 12½ per cent. against the resulting tax upon net income otherwise determined. Piper v. Willcuts, 8 Cir., 64 F.2d 813; Hoffman v. Commissioner, 2 Cir., 71 F.2d 929. The fact that under the broad language of section 23(e) a capital net loss would be deductible if it were not excluded, does not, in our opinion, require such capital net loss to be deducted from ordinary gross income to determine whether a taxpayer has a statutory *net income* for the purpose of deductions for charitable contributions. Cf. Massachusetts Mutual Life Insurance Co. v. United States, 59 F.2d 116, 75 Ct.Cl. 117, 126, affirmed 288 U.S., 269, 53 S.Ct. 337, 77 L.Ed. 739. Compare section 23 (r), Revenue Act of 1932, 26 U.S.C.A. § 23 note. Net losses on stocks, bonds, or other securities not capital assets were denied as deductions in the taxable year in which sustained for the same reason that capital net losses were denied as deductions; namely, to prevent a taxpayer from avoiding the normal and surtaxes by selling stocks and bonds on which he could sustain a loss in a taxable year in which he had a large income from other sources.

The Circuit Court of Appeals for the Second Circuit in Bliss v. Commissioner, 68 F.2d 890, 892, which involved capital net gains for 1928 and 1929, stated, in holding that a capital net gain was a part of the net income upon which the deduction for charitable contributions should be computed, that a capital net loss would be deductible without exception from ordinary net income in determining the taxpayer's net income for the purpose of deduction for

charitable contributions; and in White v. Atkins, 69 F.2d 960, 963, which also involved a capital net gain for 1929, the Circuit Court of Appeals for the First Circuit held without exception that a capital net loss was deductible from ordinary net income in determining the taxpayer's net income for the purpose of deduction for charitable contributions, and expressly overruled the decisions of the Board of Tax Appeals in Elkins v. Commissioner, supra, and Livingood v. Commissioner, supra. The Bliss and White Cases, supra, did not involve a capital net loss and, for the reasons hereinbefore stated, we are unable to concur in the views expressed as to the proper method to be employed in determining the taxpayer's net income for the purpose of deduction for charitable contributions where such taxpayer had a capital net loss for the taxable year.

We do not interpret the opinion of the Supreme Court in the Bliss Case as it has been interpreted by the Board of Tax Appeals and the Circuit Courts of Appeals in the cases hereinbefore cited. The question of whether a capital net loss should be deducted from the taxpayer's taxable net income in fixing a net income different from the taxable net income for the purpose of calculating the amount of the allowable deduction for charitable contributions does not appear to have been considered or decided by the court. Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411; United States v. Anderson et al., 269 U.S. 422, 442, 46 S.Ct. 131, 134, 70 L.Ed. 347; United States v. Mitchell, 271 U.S. 9, 14, 46 S.Ct. 418, 70 L.Ed. 799. However, we think the decision in Helvering v. Bliss, supra, lends greater support to the position of the plaintiff in this case than to that of the defendant. The court in holding that a "capital net gain" taxed at the special rate of 12½ per cent. was a part of the "net income" within the meaning of that term, as used in section 23(n), 26 U.S.C.A. § 23 (n) and note, said, 293 U.S. 144, at page 147, 55 S.Ct. 17, 19, 79 L.Ed. 246, 97 A.L.R. 207: "The scheme of all the Revenue Acts since that of 1916 has been to sweep all income of every sort, including capital gains, into what is denominated gross income and to authorize certain deductions therefrom in order to arrive at net income, —*the base for calculation of the tax.* In the Act of October 3, 1917, Congress, in order to encourage gifts to religious, educational and other charitable objects, granted the privilege of deducting such

gifts from gross income, but limited the total deduction to 15 per cent. of the taxpayer's net income, calculated in the first instance without reference to the amount of such contributions. All of the later acts have contained a like provision. The acts provide that the taxpayer shall first deduct from gross income the total of all permissible deductions save that for contributions, thus arriving at a provisional net income, and then deduct therefrom his contributions, but in no event to an amount greater than 15 per cent. of the provisional net income. By the last mentioned operation the final net income—*the base for calculation of the tax*—is ascertained. The relevant sections of the Act of 1928 are typical. They are copied in the margin." (Italics supplied.)

It will thus be seen that the court definitely held that charitable contributions were deductible in arriving at the base for the calculation of the tax—the statutory net income. In that way taxable income, to the amount of the deductible contributions, is free from tax, and the beneficent purpose of section 23(n) is made effective. In the instant case the defendant determined the base for the calculation of the tax to be $94,963.52, but refused to permit plaintiff to take a deduction for contributions in arriving at that base, notwithstanding plaintiff's *final net income* within the language of the court in the Bliss Case was $94,963.52—the base for the calculation of the tax—and was so employed by the Commissioner of Internal Revenue. The Court, 293 U.S. 144, at pages 148–150, 55 S.Ct. 17, 19, 79 L.Ed. 246, 97 A.L.R. 207, further said:

"Commencing with the Revenue Act of 1921 Congress, in order to encourage realization of profits on capital assets, saw fit to relieve gain thus derived of the heavy surtaxes then applicable, and to permit the payment of tax at a flat rate of 12½ per cent. on so much of the taxpayer's income as represented the net gain from capital transactions.

"The accomplishment of this purpose of applying two rates to *two different kinds of net income,* required new provisions as to the base for each rate. Section 101 of the Revenue Act of 1928 [26 U.S.C.A. § 101 note] prescribes the method to be followed. So far as material it is set forth in the margin. In extending this relief to taxpayers, Congress might have modified the privilege theretofore existing with respect to charitable contributions, **by** directing that they should be deducted solely from capital net gain or should be apportioned and deducted ratably from ordinary net income and from capital net gain. The Acts, however, evince no such purpose. In the Act of 1928, as will be seen by reference to sections 21, 22, and 23, supra, note 4 [26 U.S.C.A. §§ 21, 22, 23 and notes] the statutory concept of net income is preserved. These sections are found in part 2 of title 1, which deals with 'Computation of Net Income.' Section 101 [26 U.S.C.A. § 101 note] on the other hand, is found under 'Supplemental Provisions,' and is captioned 'Supplement A—Rates of Tax.' *It is obviously directed to the matter of computation of tax on a portion of net income as defined in section 21. There is nothing novel in such a division of the statutory net income into parts for the purpose of applying different rates of tax,* as witness the provisions fixing the rates on those portions of the entire net income attributable to dividends, earned income, interest on United States obligations, and gains from the sale of mines, and allowing credits for dependents." (Italics supplied.)

The two kinds of net income which existed in the Bliss Case consisted of (1) "ordinary net income," which was gross income as defined by section 22 other than gains derived from the sale of capital assets less the deductions allowed by section 23, among which was included charitable contributions, but from which was excluded capital deductions and capital net losses; and (2) "capital net gain," which was the balance of the gross income as defined by section 22 in excess of capital deductions and capital losses. In the case at bar we have only one net income, i. e., "ordinary net income." Under the provisions of the statute, including the provisions with reference to capital net gains and capital losses, if the ordinary deductions allowed by section 23 exceed that part of gross income to be used in computing "ordinary net income," the excess of such ordinary deductions is by express provision of the statute, section 101(c) (5), 26 U.S.C.A. § 101 note, to be carried over and deducted from the capital net gain, and the balance of the capital net gain, if any, is the taxpayer's *statutory net income* for the purpose of the tax. In that case there would be no normal or surtaxes, and the tax due would be the capital gains tax of 12½ per cent., regardless of the amount of the "net income." But when the gross income to

be used for the purpose of computing the "ordinary net income" is greater than the "ordinary deductions" allowed by section 23, including charitable contributions, and the capital deductions and capital losses under section 101 exceed that part of the gross income to be used in computing the capital gains, the statute stops without authorizing any carrying over of the capital net loss as a deduction from "ordinary net income" and directs that the tax imposed by sections 11 and 12 be computed upon that net income, except when to carry over and deduct such capital net loss from ordinary net income a greater normal and surtax, less a 12½ per cent. credit, would result. From this it seems to us plain enough that under the express provisions of the entire statute a taxpayer, although he has a capital net loss and, also, has an ordinary net income which produces a higher tax under sections 11 and 12 less the credit of 12½ per cent. capital net loss, is in the same situation so far as a deduction for charitable contributions is concerned as the taxpayer who has no capital gains, capital deductions, or capital losses. As we shall hereinafter show, the statute specifically permits a deduction from capital net gain of the excess of the ordinary deductions over ordinary gross income, while a capital net loss is denied, in a case like the one at bar, as a deduction from ordinary gross or net income.

In the Bliss Case the court did not decide that if a taxpayer had only one kind of net income and paid a tax on that net income his deduction for contributions was to be reduced or denied altogether as happened in the case at bar. The court simply held that ordinary net income and capital net gains were portions of the *entire net taxable income* and that they were separated for the purpose of applying different rates of tax. A capital net gain was held to be a portion of the net income as defined by section 21. Similarly "ordinary net income" is a portion of the net income as defined by section 21, and, by express provision of the statute, it may not be reduced by a capital net loss. Section 101 (c) (7), 26 U.S.C.A. § 101 note provides that: "'Ordinary net income' means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions." It will therefore be seen that ordinary net income is "net income" computed in accordance with sections 21, 22, and 23, for the reason that those sections define net income and are a part of "this title" referred to in section 101(c) (7) which has reference to title 1, Income Tax. In the Bliss Case, supra, the court further said, 293 U.S. 144, at page 150, 55 S.Ct. 17, 20, 79 L.Ed. 246, 97 A.L.R. 207:

"The plain requirements of section 101 are that in ascertaining ordinary net income there shall be excluded from the computation only items of capital gain, capital loss, and capital deductions. Charitable contributions covered by section 23(n) [26 U.S.C.A. § 23 and note] obviously are not capital deductions as defined by section 101 (c) (3), [26 U.S.C.A. § 101 note] but on the contrary are 'ordinary deductions' within the meaning of section 101(c) (4).

"By the express words of section 23(n) charitable contributions are to be deducted to ascertain net income as defined in section 21; and nothing in section 101, which prescribes merely a method for segregating a portion of that net income for taxation at a special rate, in any wise alters the right of the taxpayer to take the deduction in accordance with section 23(n)."

In the first paragraph above, the court pointed out that when section 101 controls the computation of the tax, ordinary net income is ascertained by excluding a capital net gain or capital net loss. The exclusion applies to both. A capital net gain is not included in ordinary net income but it is, nevertheless, net income, and is taxed as such. If a capital net gain were included in ordinary net income, section 101 would conflict with sections 11 and 12. It does not necessarily follow from the fact that a capital net gain (although excluded in computing ordinary net income subject to the normal and surtaxes) is a part of the statutory "net income" because it is a gain and is taxed at 12½ per cent. instead of at the rates specified in sections 11 and 12, that a capital net loss (which is specifically excluded in the determination whether the taxpayer otherwise has a taxable net income) must be deducted from the only taxable statutory net income the taxpayer has for the purpose of reducing or denying altogether the taxpayer's charitable contributions. As hereinabove pointed out, the last clause of section 101(b), 26 U.S.C.A. § 101 note, specifies the only instance when a capital net loss may be deducted from ordinary net income. It is to be deducted when such deduction will produce a greater tax than the tax (less the 12½ per cent.

credit) computed upon the ordinary net income less the charitable contributions. The Supreme Court specifically held in the Bliss Case that charitable contributions are ordinary deductions within the meaning of section 101(c) (4), 26 U.S.C.A. § 101 note, and are properly deductible in ascertaining ordinary net income. The word "excluding" appearing in section 101(c) (7), 26 U.S.C.A. § 101 note, does not contemplate exclusion of the ordinary deductions for charitable contributions. The plain language of section 101(c) is that ordinary net income, as defined by section 101(c) (7), as applied to a case involving a capital net gain or a capital net loss, is to be ascertained by the same process. We think Congress did not intend to discriminate between taxpayers having capital net gains or capital net losses in the method to be employed in determining "ordinary net income" for the application of normal and surtaxes as prescribed and imposed by sections 11 and 12. The ordinary deduction for charitable contributions was preserved in both cases. It was specifically pointed out in the Bliss decision, 293 U.S. 144, at page 150, 55 S.Ct. 17, 20, 79 L.Ed. 246, 97 A.L.R. 207, that "nothing in section 101 * * * in any wise alters the right of the taxpayer to take the deduction in accordance with section 23(n)." The statute requires the deduction for charitable contributions to be taken as a whole from ordinary net income. This applies whether the case is one involving capital net gain or capital net loss. The only instance in which the deduction for charitable contributions is not taken as a whole from "ordinary net income," either under section 23 (n) or section 120, 26 U.S.C.A. §§ 23(n) or 120 and notes, is where there is an excess of ordinary deductions, including the deduction for contributions, over the gross income computed without including capital gains, as was the case in Straus v. Commissioner, supra. In such a case the excess is subtracted in arriving at the capital net gain subject to the 12½ per cent. tax. Section 101(c) (5) expressly so provides. See, also, Ways and Means Committee Report on the Revenue Bill of 1924, No. 179, page 19, 68th Congress, 1st Session, which points out that when the ordinary deductions exceed the ordinary gross income, the excess serves to reduce the amount of the capital net gain.

If we read into any of the sections of the statutes directing how net income must be determined an implied condition that a capital net loss must be deducted as an ordinary deduction for the purpose of determining "the taxpayer's net income" upon which he may compute his allowable deduction for charitable contributions, we are forced by the provisions of section 101, 26 U.S.C.A. § 101 note, to ignore such implied condition when we come to determine the taxpayer's taxable net income for the purpose of normal and surtaxes. If we imply such condition in dealing with charitable contributions we violate, it seems to us, the well-established rule against legislation by construction and run counter to the originally expressed and subsequently intended direction of Congress that charitable contributions are to be deducted from "the taxpayer's taxable net income."

Where there is a capital net gain, such gain is a part or all of the taxpayer's statutory net income, but where there is a capital net loss the ordinary net income is the taxpayer's entire statutory net income. Judgment will be entered in favor of plaintiff for $969.79, with interest as provided by law. It is so ordered.

BOOTH, Chief Justice, and WILLIAMS, and GREEN, Judges, concur.

WHALEY, Judge, concurs in the result.