PATRICK J. ROYLE, Plaintiff, v. STANDARD FRUIT & STEAMSHIP COMPANY et al., Defendants.

Supreme Court, Special Term, Queens County, August 17, 1944.

*David M. Fink* and *Jacquin Frank* for plaintiff.

*Bingham, Englar, Jones & Houston* (*John M. Aherne* of counsel), for defendants.

Cuff, J. This motion is by plaintiff to strike out (1) the second affirmative defense and (2) the setoff and counterclaim pleaded by defendants. This kind of suit is commonly referred to as an "action brought under the Jones Act". It was not instituted until more than two years but less than three following the accident. The second affirmative defense, alleging that the limit of time to bring such suit is two years, would bar it. Plaintiff contends that the period is three years. That question of law will be considered first.

On April 22, 1908, the Federal Employers' Liability Act (U. S. Code, tit. 45, § 51 *et seq.*) became a law. It conferred upon railway employees substantial rights of great benefit in maintaining personal injury actions against their employers. This court believes that the Federal Government sought to accomplish a needed reform. It would appear from subsequent legislation that the national lawmakers became conscious that the class of beneficiaries aided by their remedial legislation was too restricted. To open wider the channels of relief designed by the Federal Employers' Liability Act, Congress on June 5, 1920, passed the "Jones Act" (Merchant Marine Act, 1920, § 33; U. S. Code, tit. 46, § 688) which granted to seamen those rights which the Federal Employers' Liability Act generated in favor of railway employees. The following language is found in the Jones Act: " Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply * * *."

This controversy over the duration of the Statute of Limitations in the Jones Act arises because on August 11, 1939, the Federal Employers' Liability Act (not mentioning the Jones Act) was amended, enlarging from two to three years, the Statute of Limitations set forth therein. (Federal Employers' Liability Act, § 6; U. S. Code, tit. 45, § 56.)

There is no direct provision in the Jones Act limiting the time in which a suit pursuant to its authority may be brought. It is conceded that the two-year restriction, which the Federal Employers' Liability Act contained at the time of the enactment of the Jones Act, was adopted by the latter.

Did amending the Federal Employers' Liability Act, without specific reference to the Jones Act, *ipso facto*, amend the Jones Act and extend to three years its Statute of Limitations?

The Jones Act does not in so many words adopt or exclude amendments of the Federal Employers' Liability Act, which would come into being after its passage. The defendants argue that the Jones Act adopted the Federal Employers' Liability Act, as it was, on the day the Jones Act became a law; that the adoption did not include amendments to the Federal Employers' Liability Act, subsequently enacted. Defendants set forth many authorities sustaining the principle, that changes made in an adopted statute, even its repeal, are without effect upon the adopting law. That rule of statutory construction is not new; nor is it a departure from the logic and reason which characterize the courts' interpretations of the laws of the land. But the rule gives way when a contrary legislative intent is discernable. " ' Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken *unless it does so by express intent.*' " (Italics supplied.) (*Hassett* v. *Welch*, 303 U. S. 303, 314). It is not necessary, in order to express its intention that a legislative body employ direct terms. If the language taken as a whole makes the intent clear, that should satisfy the rule.

Prior to the enactment of the Jones Act, a seaman, who embarked upon litigation seeking redress against his employer for personal injuries, was usually shipwrecked upon those rocks of defense, the " fellow servant rule " and " assumption of the risk ". The Jones Act sought to remove those hazards and to minimize the effect of contributory negligence in the path of the seaman charting his way through court.

For twelve years (1908 to 1920) these aids fell to the lot of the railway employees alone. No constitutional inhibition stayed the Congressional hand from extending them to seamen. Why were seamen, in the first instance, omitted from the benefits of the Federal Employers' Liability Act? The records provide no answer. Why, after that period of twelve years, were seamen granted those statutory helps? The records answer that. Congress having jurisdiction over navigable waters, has legislated

for many years on that subject. Seamen are the human elements whose energies produce the commerce which navigable waters accomodate and which in turn inspire Congress to act. Without the commerce there would be little Federal legislation. Seamen, therefore, are the instigating agencies for the laws of Congress dealing with commerce in navigable streams. STONE, J., in *The Arizona* v. *Anelich* (298 U. S. 110, 123), characterized seamen as " peculiarly the wards of admiralty ". If Congress found it just to limit defenses in suits by railway men against their employers, it must have been an unintentional omission when that assistance was withheld from the wards of its own court of admiralty. The Jones Act was passed to correct that Congressional lapse. It follows, therefore, that Congress intended to make available to seamen all the benefits that the Federal Employers' Liability Act granted to railway employees. The bestowing language, " Any seaman who · shall suffer personal injury * * * may * * * maintain an action * * * and * * * all statutes of the United States modifying or extending the common-law * * * in cases of * * * · railway employees *shall* apply " (italics supplied), contemplates the future. The selection of words seems deliberate. They mean that, when injured, the seaman will look to the law as of the time of his injury. It cannot be seriously contended that had the question presented here been propounded in Congress, the lawmakers would have extended the Statute of Limitations for railway men's actions and denied that help to seamen. The record discloses no legislative discussion of the subject. There being no reason to exclude seamen's suits, it would seem that Congress not only intended to include them but, by its silence in the amendment and by reason of its plain purposes in originally passing the Jones Act, expressed that intent as clearly as it could short of direct language. To hold that this particular amendment is to have no effect upon the Jones Act is to destroy well-intentioned legislation by straining its provisions through a fine judicial colander. Courts have been cautioned to " liberally " construe the Jones Act (*The Arizona* v. *Anelich, supra,* p. 123) and to avoid thwarting its purposes " by nice technicalities not within the minds of the legislators " (*Pleasants* v. *United States,* 22 F. Supp. 964, 971). This court is not unmindful of the contrary view expressed in that respected work, Benedict on Admiralty ([6th ed.], Vol. 4, § 612, p. 205).

Although this question has not received appellate considera-tion, there are special and-trial term decisions which sustain the foregoing interpretation. · (*Chisholm* v. *Cherokee-Seminole*

*S. S. Corporation*, 36 F. Supp. 967; *The Swiftarrow*, 34 F. Supp. 541; *Gahling* v. *Colabee S. S. Co.*, 37 F. Supp. 759; *Streeter* v. *Great Lakes Transit Corp.*, 49 F. Supp. 466.)

This motion also seeks a dismissal of the setoff and counterclaim pleaded by defendant Standard Fruit & Steamship Company. The latter contends that its pleading is authorized by section 5 of the Federal Employers' Liability Act (U. S. Code, tit. 45, § 55). "Indemnity" in that statute does not mean voluntary advances made by an employer to an injured employee for care and wages. It refers to obligations met as required by law. The advances made by defendant in the case at bar were voluntary. They are not the subject of setoff or counterclaim.

Plaintiff's motion is granted.

(On reargument, December 11, 1944.)

Motion by defendant, Standard Fruit & Steamship Company, to reargue motion made by plaintiff to strike out that defendant's answer in part.

The present application is directed against the court's striking out the "Set off and counterclaim" pleaded in the answer. That part of the original motion, defendant's counsel states, was treated by him only as incidental to the main part of plaintiff's application (to strike out defendant's Statute of Limitations' plea) when the motion was submitted. Therefore, he says, it was not adequately presented by defendant. The motion to reargue is granted.

It is this court's revised view, that defendant should be permitted at the trial to show the substantial advances ($9,498.13) it made to plaintiff to aid him when helpless in his injured condition.

No provision of the law of our State has been cited which authorizes a defendant to plead as a "Set off and counterclaim" those "advances" voluntarily made by defendant to a plaintiff in a personal injury suit for medical expenses and lost wages. Recovering for "maintenance and cure" is not novel to the Federal practice. The advances made in this case were of that nature. This action has been brought under "The Jones Act". (U. S. Code, tit. 46, § 688.) If defendant's advances to plaintiff may be pleaded in the answer as a setoff and counterclaim, the right to do so must be found in that statute. Defendant cites section 5 (Federal Employers' Liability Act, § 5; U. S. Code, tit. 45, § 55) thereof as such authority.

To strike out the plea could control the admission of evidence at the trial. The rule — matter not pleaded may not be proved — is well established in our practice. Considering section 5 and the apparent intent thereof, as gleaned from the statute as a whole relative to advances made to an injured person, there appears to be authority for the plea in the answer which defendant has designated "Set off and Counterclaim".

On reconsideration, the former decision (August 17, 1944), granting plaintiff's motion to strike out, is changed, and the relief sought by plaintiff as to the "Set off and counterclaim" is denied.