HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* BLISS.*

No. 6.   Argued October 9, 10, 1934.—Decided November 5, 1934.

* Together with No. 7, *Helvering, Commissioner of Internal Revenue,* v. *Harbison,* certiorari to the Circuit Court of Appeals for the Second Circuit.

No. 8. *Helvering, Commissioner of Internal Revenue,* v. *Colgate.* Certiorari to the Circuit Court of Appeals for the Second Circuit. November 5, 1934.   Judgment affirmed, per stipulation of counsel to abide the decision in No. 7.

*Solicitor General Biggs,* with whom *Assistant Attorney General Wideman* and *Messrs. James W. Morris* and *J. P. Jackson* were on the brief, for petitioner.

*Mr. R. L. von Bernuth,* with whom *Mr. James McKinley Rose* was on the brief, for respondent in No. 6.

*Mr. Hugh Satterlee,* with whom *Mr. James E. MacCloskey, Jr.,* was on the brief, for respondent in No. 7.

By leave of Court, briefs were filed on behalf of certain individuals by *Messrs. Frederick Schwertner, Phillips Ketchum,* and *John E. McClure,* as *amici curiae.*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

These cases present the question whether deductions on account of charitable contributions are to be taken from net income as defined by § 21, or from ordinary net income as defined by § 101 (c) (7), of the Revenue Act of 1928.[1]   Though the deductions claimed and disallowed in the two cases differ in amount, the principle involved

---

[1] 45 Stat. 797, 811; U. S. C. Tit. 26, §§ 2021, 2101.

is the same in both, and statement of the facts in No. 6 will suffice.

In 1928 respondent had a net income (before any deduction for contributions to charity) of approximately $500,000. Some $211,000 of this was gain from the sale of capital assets, upon which she elected to be taxed at the rate of 12½ per cent. pursuant to § 101 of the Act. During the year she made charitable contributions, as defined in the statute, to the amount of approximately $44,-000. In her return she deducted the amount of the contributions from her total net income. She paid tax on $211,000 of the net income, after the deduction, at the rate of 12½ per cent. and on the balance at normal and surtax rates. The Commissioner of Internal Revenue ruled the respondent could not use the $500,000 of net income as a base on which to calculate the 15 per cent. deduction for charitable contributions, but must first subtract the $211,000 of net gain on sale of capital assets and use only the balance of $289,000 of ordinary net income. A reduction of the allowable deduction for charitable contributions to about $40,000, and a deficiency in tax paid of about $1,000, resulted. The Board of Tax Appeals sustained the Commissioner, but the Circuit Court of Appeals, by a divided court, reversed the Board.[2] We granted certiorari.

For " net income," the base specified in § 23 (n) upon which the 15 per cent. deduction of charitable contribu-

---

[2] 68 F. (2d) 890. The opinion of the Circuit Court of Appeals in the *Harbison* case is reported 68 F. (2d) 1004. The same result was reached in *White* v. *Atkins,* 69 F. (2d) 960 (C. C. A. 1), and in *Blow* v. *United States,* 5 F. Supp. 737 (D. C. N .D. Ill.). The rulings of the Board of Tax Appeals were at first in accordance with the petitioner's contention: Elkins *v.* Commissioner, 24 B. T. A. 572; Livingood *v.* Commissioner, 25 B. T. A. 585; and the instant cases, 26 B. T. A. 896; 27 B. T. A. 205 and 506. Subsequently the full Board reached an opposite result in Straus *v.* Commissioner, 27 B. T. A. 1116. See also Robinette *v.* Commissioner, 27 B. T. A. 1426.

tions is to be calculated, the petitioner would substitute " ordinary net income " as defined in § 101. So to read the Act would violate its plain terms and run counter to the history of the legislation.

The scheme of all the Revenue Acts since that of 1916 has been to sweep all income of every sort, including capital gains, into what is denominated gross income and to authorize certain deductions therefrom in order to arrive at net income,—the base for calculation of the tax. In the Act of October 3, 1917,[3] Congress, in order to encourage gifts to religious, educational and other charitable objects, granted the privilege of deducting such gifts from gross income, but limited the total deduction to 15 per cent. of the taxpayer's net income, calculated in the first instance without reference to the amount of such contributions. All of the later Acts have contained a like provision. The Acts provide that the taxpayer shall first deduct from gross income the total of all permissible deductions save that for contributions, thus arriving at a provisional net income, and then deduct therefrom his contributions, but in no event to an amount greater than fifteen per cent. of the provisional net income. By the last mentioned operation the final net income—the base for calculation of the tax—is ascertained. The relevant sections of the Act of 1928 are typical. They are copied in the margin.[4]

---

[3] § 1201, 40 Stat. 330.

[4] Part II.—Computation of Net Income.

Sec. 21.   Net Income.

" Net income " means the gross income computed under section 22, less the deductions allowed by section 23.

Sec. 22.   Gross Income.

(a) General definition.—" Gross income " includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership

Commencing with the Revenue Act of 1921 Congress, in order to encourage realization of profits on capital assets, saw fit to relieve gain thus derived of the heavy surtaxes then applicable, and to permit the payment of tax at a flat rate of 12½ per cent. on so much of the taxpayer's income as represented the net gain from capital transactions.[5]

The accomplishment of this purpose of applying two rates to two different kinds of net income, required new provisions as to the base for each rate. Section 101 of the Revenue Act of 1928 prescribes the method to be followed. So far as material it is set forth in the margin.[6]

---

or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

. . . . . . .

Sec. 23. Deductions From Gross Income.

In computing net income there shall be allowed as deductions:

. . . . . . .

(n) Charitable and other contributions.—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

. . . . . . .

(2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. . . .

. . . . . . .

to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection. . . . (45 Stat. 797, 799, 801.)

[5] Revenue Act of 1921, § 206, 42 Stat. 232; Revenue Act of 1924, § 208, 43 Stat. 262; Revenue Act of 1926, § 208, 44 Stat. 19.

[6] Subtitle C—Supplemental Provisions.

Supplement A—Rates of Tax.

Sec. 101. Capital Net Gains and Losses.

(a) Tax in case of capital net gain.—In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all

In extending this relief to taxpayers, Congress might have modified the privilege theretofore existing with respect to charitable contributions, by directing that they should

other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

(b) Tax in case of capital net loss.—In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of· all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

(c) Definitions.—For the purposes of this title—

(1) " Capital gain " means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

(2) " Capital loss " means deductible loss resulting from the sale or exchange of capital assets.

(3) " Capital deductions " means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year.

(4) " Ordinary deductions " means the deductions allowed by section 23 other than capital losses and capital deductions.

(5) " Capital net gain " means the excess of the total amount of capital gain, over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains.

· (6) " Capital net loss " means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

(7) " Ordinary net income " means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions. (45 Stat. 811; U. S. C. Tit. 26, § 2101.)

be deducted solely from capital net gain or should be apportioned and deducted ratably from ordinary net income and from capital net gain. The Acts, however, evince no such purpose. In the Act of 1928, as will be seen by reference to §§ 21, 22 and 23 (*supra*, note 4), the statutory concept of net income is preserved. These sections are found in Part II of Title I, which deals with " Computation of Net Income." Section 101, on the other hand, is found under " Supplemental Provisions," and is captioned " Supplement A—Rates of Tax." It is obviously directed to the matter of computation of tax on a portion of net income as defined in § 21. There is nothing novel in such a division of the statutory net income into parts for the purpose of applying different rates of tax, as witness the provisions fixing the rates on those portions of the entire net income attributable to dividends, earned income, interest on United States obligations, and gains from the sale of mines, and allowing credits for dependents.[7]

The plain requirements of § 101 are that in ascertaining ordinary net income there shall be excluded from the computation only items of capital gain, capital loss, and capital deductions. Charitable contributions covered by § 23 (n) obviously are not capital deductions as defined by § 101 (c) (3), but on the contrary are " ordinary deductions " within the meaning of § 101 (c) (4).

By the express words of § 23 (n) charitable contributions are to be deducted to ascertain net income as defined in § 21; and nothing in § 101, which prescribes merely a method for segregating a portion of that net income for taxation at a special rate, in any wise alters the right of the taxpayer to take the deduction in accordance with § 23 (n).

If the meaning of the Act were doubtful, we should still reach the same conclusion. The exemption of in-

---

[7] See §§ 25, 31, and 102 of the Revenue Act of 1928, 45 Stat. 802, 804, 812.

come devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed. Nor should the reduction in the rate of tax on capital gain, first granted in the Revenue Act of 1921, be held to circumscribe the privilege granted in the earlier Acts, and retained in later ones, with respect to charitable contributions, unless that result be plainly required by the language used. As has been shown the statutes if read as written lead to a contrary result. Moreover, from 1923 to 1932 the Commissioner uniformly ruled that the deduction for charitable contributions was to be taken from net income before computation of the tax and hence in whole from ordinary net income.[8] The reënactment in later Acts of the sections permitting the deduction indicate Congressional approval of this administrative interpretation.

The judgments are

*Affirmed.*

---

[8] See Corp. Trust Co., Fed. Inc. Tax Service, 1924, Par. 2033; I. T. 2104, Cum. Bull. III-2, p. 152; Mim. 3931, XI-1, C. B. 33.