UZAL H. McCARTER (DECEASED), FIDELITY UNION TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69193. Promulgated October 29, 1935.

*John A. Conlin, C. P. A.*, for the petitioner.
*S. L. Young, Esq.*, for the respondent.

OPINION.

BLACK: Under the decision of the Supreme Court in *Helvering* v. *Bliss*, 293 U. S. 144, the petitioner is entitled to include the capital gains of the decedent in his income for the purpose of computing the 15 percent deduction, under section 23(n) of the Revenue Act of 1928. This should be done in a redetermination of the deficiency under Rule 50.

We will next take up and decide the second issue. On September 4, 1919, the decedent, through his brokers, Johnson & Wood, sold 2,000 shares of Public Service Corporation common stock and on April 28, 1930, he sold through these same brokers 10,000 shares of the same stock. In both cases the brokers had been instructed by the decedent to sell from the later purchases and in both cases in making delivery they partially violated these instructions. The issue is whether the intention of the decedent or the actual deliveries control.

The instant case was submitted and briefs were filed prior to the decision of the Supreme Court in *Helvering* v. *Rankin*, 295 U. S. 124, but, by permission granted, petitioner has filed a supplemental brief and cites the Supreme Court's decision in the *Rankin* case and urges it as supporting his contention.

In determining the meaning of the Court's decision in the *Rankin* case and what application it has to the question we have here to determine, we think it is important to bear in mind that Turner, the purchaser and seller of stocks in that case, was dealing entirely on margins. At the outset of its opinion the Court said: " When gain

or loss is to be determined on the sale of stock outright as an investment, the identification of the shares sold with those purchased ordinarily presents no difficulty. But when the taxpayer has engaged in marginal transactions on a stock exchange, the identification of sales and purchases is frequently impossible." Again, the Court pointed out in a later paragraph that: " In none of these transactions did the broker deliver to Turner, or Turner to the broker, any stock certificate. No specific certificate of stock was ever bought or sold by the broker for Turner; and none was ever earmarked or allocated to him. The purchases and sales affecting his account were made through the medium of street certificates handled by the broker; and the transactions were evidenced solely by debits and credits to his account on the broker's books."

In the instant case the facts are different in certain material respects from those above quoted. It is not contended here that petitioner's decedent was buying and selling stocks on margin. While the stocks of Public Service Corporation which McCarter carried in his account with the brokerage firm of Johnson & Wood were not issued in his name, they had been earmarked or allocated to him in such a way that the certificates were capable of identification. For example, as to the sale of 2,000 shares which the decedent made on September 4, 1929, it is stipulated that: " the delivery clerk in the said brokerage firm of Johnson & Wood in making delivery of certificates in connection with the sale of the 2,000 shares in question, made the following delivery: 1,000 shares were delivered from certificates representing a part of the original 3,000 shares in the account as of July 29, 1929, which carried a basis to Mr. McCarter of $29.05½ per share and 1,000 shares from certificates representing the shares purchased August 12, 1929." A similar stipulation is made as to the 10,000 shares which McCarter sold on April 28, 1930, except it is stipulated that of the 10,000 shares delivered in consummating the sales, 800 shares were not identifiable.

We think these stipulated facts make the instant case distinguishable from the *Rankin* case, where all the purchases and sales were made on margin. We think that the substance of the Court's opinion in the *Rankin* case was to hold that, while in margin transactions it is impossible to earmark or allocate any particular shares purchased or sold so as to make the shares of stock identifiable by certificates, nevertheless identification by certificates is not the only means of identification and identification may be made by lots in accordance with the dates purchased, and that, where the evidence clearly shows that the owner of stock by purchases or margin gives his broker instructions to sell a particular lot purchased on a given date and at a particular price, he is exercising his right of selection of what property he desires to sell and his right must be recognized and the

profit or loss computed on the sale thus made, and that in such a case the so-called first in, first out rule is not applicable.

The Commissioner in the instant case does not seek to apply the first in, first out rule except perhaps as to 800 shares of the 10,000 shares sold April 28, 1930. Of this particular lot of shares sold, it has been stipulated that 800 shares were not identifiable. Presumably as to these 800 shares the Commissioner has used the first in, first out rule, although the stipulation does not enlighten us on that point. As to the remainder of the shares sold, the Commissioner contends that they were identifiable and as a matter of fact the stipulation which has been filed does identify them.

It is true that McCarter did give his broker specific instructions as to what particular lots of stock he should sell for him, and if he had been dealing in stocks on margin, it would seem that this would be sufficient identification according to the rule laid down by the Supreme Court in the *Rankin* case. But he was not dealing on margin and the parties have stipulated what shares were actually delivered in completion of the sale except 800 shares not identifiable.

In several Board and court cases it has been decided that the vendor's intention to sell certain shares of stock is not determinative where other shares were actually delivered. *Skinner* v. *Eaton*, 34 Fed. (2d) 575; affd., 45 Fed. (2d) 568; certiorari denied, 283 U. S. 837; *Horner* v. *Commissioner*, 72 Fed. (2d) 407, affirming 28 B. T. A. 360; *Mickler Holding Co.*, 29 B. T. A. 300; *A. D. Geoghegan*, 31 B. T. A. 93; *Commissioner* v. *Merchants & Manufacturers Fire Insurance Co.*, 72 Fed. (2d) 408; *Snyder* v. *Commissioner*, 73 Fed. (2d) 5, affirming 29 B. T. A. 39; *William W. Miller*, 31 B. T. A. 192. In *Commissioner* v. *Merchants & Manufacturers Fire Insurance Co.*, *supra*, this rule was applied to the following state of facts. An executive and finance committee of the board of directors of the insurance company controlled its investments and sales. This was done through the investment department of Corroon & Reynolds, Inc., which managed the company's investment business. The executive committee notified Corroon & Reynolds, Inc., to sell certain stock by marking on a card the stock to be sold. The stock was deposited in a trust company. Corroon & Reynolds, Inc., did not notify the broker as to what stock was to be sold and the trust company made delivery of stock other than that which the executive committee desired to be sold. In deciding that case the court said:

> The taxpayer computed its income tax as though it had sold, in each instance, the stock last acquired. The Commissioner held that the stock sold was that represented by the certificates actually delivered rather than the stock which the taxpayer intended to sell, and therefore assessed a deficiency. The Board of Tax Appeals found as a fact that the taxpayer intended to sell the later acquired stock, and sustained the taxpayer's contention that the loss or gain

on the sales should have been computed by deducting the cost of the stock, identified by the crossmarks on the director's cards, from the sum which it obtained by the sales of the stock. It thus disregarded the cost of the stock represented by the certificates delivered, and submitted the cost of the stock represented by other certificates, which the taxpayer intended to sell but which were not in fact sold.

We think the test should be that applied by the Board of Tax Appeals in *Horner* v. *Commissioner*, 28 B. T. A. 360, affirmed by this court on July 26, 1934, 72 F. (2d) 407; i. e., what was actually done rather than what was intended to be done. Whatever the intention may have been, the stock actually sold was that first acquired. We think the Board of Tax Appeals erred in giving effect to the intention rather than the fact.

The above case differs from this proceeding in one particular and that is that while the insurance company was careful to notify their subagents, Corroon & Reynolds, Inc., what they desired to be sold, Corroon & Reynolds, Inc., did not so inform the broker. We do not see that this makes any material difference in that in both cases the broker did precisely the same thing, sold stock generally. Besides, in this proceeding Johnson & Wood were the agents of the decedent. Their acts were his acts unless repudiated, which is not the case here. To put it differently, we see no difference between the taxpayer making a mental decision as to what he wished to be sold and confiding that intention to his agent.

It has been argued that a certificate of stock is but an evidence of the shares represented by it, and that under certain circumstances the shares may travel in one direction and the certificate in another. But here, on September 29, 1929, the decedent owned all the shares on deposit with Johnson & Wood and he was entitled to the certificates whenever he demanded them. These certificates represented certain shares of stock, and the delivery of the certificates transferred title to the shares which they represented. Indeed, this is the usual and ordinary way of transferring title to shares of stock. When the certificates were delivered, it mattered not whether in compliance with the directions of the decedent or not, they carried with them the title to the shares which they represented and vested that title in the purchaser. The deliveries, as made, have never been repudiated. Under these circumstances we are of opinion that, since the decedent, through his agent, transferred title to the shares represented by the certificates, it is too late now for him to claim that the title to the shares represented by other certificates passed to the purchaser. *William W. Miller, supra.* Cf. *Brooks* v. *Burnet*, 288 U. S. 378.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN, ARUNDELL, and MATTHEWS dissent on the second point.