## LOCKHART v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6116.

Circuit Court of Appeals, Third Circuit.
March 16, 1937.

Rehearing Denied April 20, 1937.

William E. Sims, of New York City, and J. Merrill Wright and J. Stanton Carson, both of Pittsburgh, Pa. (Sage, Gray,

Todd & Sims, of New York City, and Wright & Rundle, of Pittsburgh, Pa., of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for the respondent.

Before BUFFINGTON and THOMPSON, Circuit Judges, and MARIS, District Judge.

MARIS, District Judge.

This is a petition to review a decision of the Board of Tax Appeals determining a deficiency in income tax to be due by the petitioner for the year 1929. The Board found that the petitioner's taxable net income for that year before the allowance of any deduction for charitable contributions was $911,599.10. This amount represented ordinary income of $966,467.20, less a capital net loss for the year of $54,868.10. During the year the petitioner made contributions or gifts to persons and organizations within the classes specified and described in section 23(n) of the Revenue Act of 1928 (26 U.S.C.A. § 23(o) and note), in the total amount of at least $144,970.08. The petitioner concedes that he is not within the exceptions to the 15 per cent. limit on deduction for contributions set forth in section 120 of the Revenue Act of 1928 (26 U.S.C.A. § 120 and note).

The deduction for contributions claimed by the petitioner in his income tax return for 1929 was $131,200.84. The deduction allowed by the Commissioner in his initial determination of a deficiency was $202,162.-06. On appeal to the Board of Tax Appeals the Commissioner contended that the amount of petitioner's allowable deduction for contributions was $136,739.87, which is 15 per cent. of $911,599.10. On the other hand, the contention of the petitioner was that $144,970.08, which is 15 per cent. of $966,467.20, was allowable as a deduction in computing ordinary net income subject to normal tax and surtaxes. The Board sustained the Commissioner's contention. Its decision determined a deficiency in income tax for the year in the amount of $1,975.26. The petitioner thereupon filed the present petition to review its decision.

The sole question for our consideration is whether the net income on which the 15 per cent. limitation for deduction of charitable contributions is computed under section 23(n) of the Revenue Act of 1928 (26 U.S.C.A. § 23(o) and note) is to be determined after deducting therefrom capital net losses sustained by the taxpayer, as the Commissioner contends, or whether such capital net losses are not to be taken into account, as the petitioner argues. This question depends for its decision upon the construction of certain of the provisions of the Revenue Act of 1928, 45 Stat. 791, which are set forth in full in the margin,[1] and it may be restated to be whether the amount of the deduction for charitable contributions is to be based on "net income" as defined in sec-

[1] "§ 21. Net income

"'Net income' means the gross income computed under section 22, less the deductions allowed by section 23.

"§ 22. Gross income

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"§ 23. Deductions from gross income

"In computing net income there shall be allowed as deductions: * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—* * *

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *

"(n) Charitable and other contributions. In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

"[certain specified corporations and organizations] to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection. * * *

"§ 101. Capital gains and losses

"(a) Tax in Case of Capital Net Gain. In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall

tion 21 (26 U.S.C.A. § 21 and note) or "ordinary net income" as defined in section 101 (26 U.S.C.A. § 101 and note).

The Commissioner strongly urges that the decision of this question is controlled by Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 19, 79 L.Ed. 246, 97 A.L.R. 207. In that case the question was presented whether the deduction for charitable contributions should be computed upon "net income" which included capital net gains or upon "ordinary net income" from which capital net gains were excluded. The Supreme Court held that capital net gains should be included in computing the 15 per cent. deduction. In delivering the opinion of the court Mr. Justice Roberts said, inter alia:

"For 'net income,' the base specified in section 23(n) * * * upon which the 15 per cent. deduction of charitable contributions is to be calculated, the petitioner would substitute 'ordinary net income' as defined in section 101. So to read the act would violate its plain terms and run counter to the history of the legislation. * * *

"Commencing with the Revenue Act of 1921 Congress, in order to encourage realization of profits on capital assets, saw fit to relieve gain thus derived of the heavy surtaxes then applicable, and to permit the payment of tax at a flat rate of 12½ per cent. on so much of the taxpayer's income as represented the net gain from capital transactions. * * *

"In extending this relief to taxpayers, Congress might have modified the privilege theretofore existing with respect to charitable contributions, by directing that they should be deducted solely from capital net gain or should be apportioned and deducted ratably from ordinary net income and from capital net gain. The Acts, however, evince no such purpose. In the Act of 1928, as will be seen by reference to sections 21, 22 and 23 * * * supra, note 4, the statutory concept of net income is preserved. These sections are found in part 2 of title 1, which deals with 'Computation of Net Income.' Section 101, * * * on the other hand, is found under 'Supplemental Provisions,' and is captioned 'Supplement A—Rates of Tax.' It is obviously directed

first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

"(b) Tax in Case of Capital Net Loss. In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

"(c) Definitions. For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets.

"(3) 'Capital deductions' means such deductions as are allowed by section 23 for

the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year.

"(4) 'Ordinary deductions' means the deductions allowed by section 23 other than capital losses and capital deductions.

"(5) 'Capital net gain' means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains.

"(6) 'Capital net loss' means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

"(7) 'Ordinary net income' means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions.

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business."

to the matter of computation of tax on a portion of net income as defined in section 21. There is nothing novel in such a division of the statutory net income into parts for the purpose of applying different rates of tax, as witness the provisions fixing the rates on those portions of the entire net income attributable to dividends, earned income, interest on United States obligations, and gains from the sale of mines, and allowing credits for dependents.

"The plain requirements of section 101 are that in ascertaining ordinary net income there shall be excluded from the computation only items of capital gain, capital loss, and capital deductions. Charitable contributions covered by section 23(n) * * * obviously are not capital deductions as defined by section 101(c) (3), * * * but on the contrary are 'ordinary deductions' within the meaning of section 101(c) (4). * * *

"By the express words of section 23(n) charitable contributions are to be deducted to ascertain net income as defined in section 21; and nothing in section 101, which prescribes merely a method for segregating a portion of that net income for taxation at a special rate, in any wise alters the right of the taxpayer to take the deduction in accordance with section 23(n)."

The petitioner contends that that case is not conclusive here, since it involved capital net gain, while this involves capital net loss. It is true that section 101(a), 26 U.S.C.A. § 101 note, relates to capital net gain, while capital net loss is covered by section 101(b), 26 U.S.C.A. § 101 note, and that the provisions of the two subsections are somewhat different, one of the chief differences being that the provisions relating to capital net gain are optional, while those relating to capital net loss are compulsory. We do not think that those differences have any bearing on the question, however.

It is clear that "net income" as defined by section 21 (26 U.S.C.A. § 21 and note) and computed under sections 22 and 23 (26 U.S.C.A. §§ 22, 23 and notes) not only includes capital gains, but also is to be determined after the deduction of capital losses, since the latter are losses deductible from gross income under section 23(e), 26 U.S.C.A. § 23(e) and note. The Bliss Case holds that net income as so determined is to be used as the basis for computing the charitable deduction in cases involving capital net gains. The fact that both subdivisions (a) and (b) of section 101 refer to "ordinary net income," meaning in each case net income after the exclusion of all items of capital gain, capital loss, and capital deductions, when considered in the light of the fact that the words "ordinary net income" are not used with reference to the computation of the deduction for charitable contributions in either case, leads inevitably to the conclusion that this deduction is to be computed in the same manner in each case.

It follows that the construction placed by the Supreme Court on the capital net gain subsection applies equally to the capital net loss provision and that "net income" referred to in section 23(n) as a base for the computation of the 15 per cent. deduction for charitable contributions means net income computed under the provisions of section 23, that is, after the deduction, inter alia, of all losses referred to in subdivision (e) of that section including all capital losses as defined in section 101.

This conclusion is supported by the fact that the Supreme Court in a footnote to its opinion in Helvering v. Bliss, supra, indicated by its reference to certain capital net loss cases decided by the Board of Tax Appeals (Elkins v. Commissioner, 24 B.T.A. 572, Livingood v. Commissioner, 25 B.T.A. 585) that it understood the rule announced in that case to apply to cases involving capital net loss as well as to those involving capital net gain. The same conclusion has recently been reached upon substantially similar facts by the Circuit Court of Appeals for the Seventh Circuit in Avery v. Commissioner, 84 F.(2d) 905. The Supreme Court denied certiorari (57 S.Ct. 231, 81 L.Ed. ——) in the Avery Case December 7, 1936.

The decision of the Board of Tax Appeals is affirmed.