**GULF OIL CORPORATION, Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of the Department of the Interior of the United States, Vincent T. McKelvey, Director of the United States Geological Survey, W. A. Radlinski, Deputy Director of the United States Geological Survey, F. J. Schambeck, Oil and Gas Supervisor, Pacific Area, Geological Survey Conservation Division, Defendants.**

Civ. No. 77–2287–HP.

United States District Court,
C. D. California.

June 21, 1978.

---

**16**

J. L. O'Laughlin, Wm. V. Kastler, Los Angeles, Cal., for plaintiff.

James W. Moorman, Asst. Atty. Gen., Land & Natural Resources Div., Washington, D. C., Andrea Sheridan Ordin, U. S. Atty., C. D. Cal., Los Angeles, Cal., Gerald S. Fish, Atty.—Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PREGERSON, District Judge.

This matter is before the court on cross-motions for summary judgment. After considering the pleadings and the memoranda of law submitted by both parties as well as the oral argument heard on May 22, 1978, the court determines that plaintiff's motion for summary judgment should be granted and defendant's motion for summary judgment should be denied.

This action concerns three federal oil and gas leases owned and operated by plaintiff Gulf Oil Corporation as lessee. The leases, granted by the federal government as lessor pursuant to Section 17 of the Mineral Leasing Act of 1920, 30 U.S.C. § 226, are described as follows: Sacramento 019376, issued effective December 1, 1939; Los Angeles 055472, issued effective April 1, 1944; and Sacramento 040666, issued effective September 1, 1946. Each lease provides in Section 2(e) that the lessee will pay to the lessor royalty "on the amount or value of all production from the lands (except that portion thereof used for production purposes on said lands or unavoidably lost)." Until about November 1974, similar language had been used as a standard provision of federal oil and gas leases issued after enactment of the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 et seq.

In November 1974, the Department of the Interior (the "Department"), through F. J. Shambeck, United States Geological Survey, Oil and Gas Supervisor for the Pacific Area, issued a "Notice to Lessees and Operators of Federal Onshore Oil and Gas Leases" (NTL–4). NTL–4 requires onshore federal oil and gas lessees to pay royalty on all oil and gas produced at the well after November 1974, including that produced from and used on the lease for production purposes.

On May 24, 1976, Gulf Oil Corporation notified the District Engineer, United States Geological Survey, Bakersfield, California, of its intention to begin cyclic steam injection for production purposes on Los Angeles Lease 055472 and to fuel the generator with crude oil produced from the leasehold. Despite contrary language found in Section 2(e) of Lease 055472, the District Engineer notified plaintiff that NTL–4 required payment of royalty on crude oil produced from the leasehold and used to fuel the steam generator. The decision to apply NTL–4 to plaintiff's lease was appealed unsuccessfully to the Director, United States Geological Survey, and to the Secretary of the Interior. The adverse decision was applied to plaintiff's other two leases as well.

Section 17 of the Mineral Leasing Act of 1920 (the "Act"), 30 U.S.C. § 226, is the asserted basis for the newly-imposed royalty requirement set out in NTL–4. From the time of its enactment in 1920 until its amendment in 1946, Section 17 provided for

the payment of royalty on the "amount or value of production." This language differed from that contained in Sections 18 and 19 of the Act, 30 U.S.C. §§ 227 and 228, wherein oil and gas produced from and used on the lease for production purposes were specifically exempted from royalty payments. Despite this difference, the Department interpreted all three sections uniformly. Thus, during the time period 1920–1946, the Department consistently interpreted Section 17 as not requiring royalty to be paid on total oil and gas production at the well. Accordingly, oil and gas produced from and used on federal·leaseholds for production purposes was exempt from royalty obligations. The royalty provisions of plaintiff's three leases, signed during this time period, are consistent with the Department's earlier interpretation. NTL–4's royalty requirements, however, are contrary to this interpretation.

In support of NTL–4, defendants assert that the Department's interpretation of Section 17 during this 26-year period was erroneous. They argue that the exemptions from royalty obligations specifically set out in Sections 18 and 19 should not have been applied to leases, such as plaintiff's, issued under Section 17. They contend that since express statutory authority for such exemptions did not exist under Section 17, any lease provisions purporting to grant the exemptions are invalid. Defendants thus conclude that the provisions of plaintiff's leases exempting from payment of royalty oil and gas produced from and used on the leasehold for production purposes are invalid.

In response, plaintiff focuses on the 1946 amendment to Section 17, which added the phrase, "removed or sold from said lease," after the word "production." In light of this amendment, plaintiff concludes that whether the 1920–1946 interpretation of Section 17 was correct is immaterial. The critical issue is whether the 1946 amendment ratifies the Department's interpretation at the time plaintiff's leases were issued.

In determining this critical issue, the court must first decide what Congress intended by the 1946 amendment to Section 17. Although legislative history on the amendment is scanty, plaintiff has uncovered the following remarks made by C. P. Watson, Vice-President of Seaboard Oil Corporation, on August 30, 1945, during Senate Subcommittee hearings on the bill that amended the Mineral Leasing Act (S. 1236):

> For years the Government, under regulations of the Interior Department, has been computing royalty on the basis of sales, or, as we in the industry say, on the "run tickets." Recently, I have been advised that the Interior Department is going to change that practice; that from now on Government lessees must account for and pay royalty not on the basis of the oil and gas removed from the lease, but on the basis of the production at the well.

Hearings on S. 1236 Before the Subcommittee of the Senate Committee on Public Lands and Surveys, 79th Cong., 1st Sess., at 160. Mr. Watson then proposed an amendment to prevent the contemplated change in assessing royalty payments:

> I would suggest for your consideration, therefore, the addition of the words "removed or sold from said lease" after the word "production" . . . .

*Id.*[1] Watson's suggested language was adopted by Congress verbatim. This is persuasive evidence that in enacting the 1946 amendment to Section 17 Congress intended to ensure that royalty would be due only on oil and gas "removed" from the leasehold, not on total oil and gas produced at the well. Since oil and gas used for production purposes on the leasehold where they were initially produced are clearly not "removed" from that leasehold, no royalty should be required by Section 17.

Reinforcing this view of the Congressional intent behind the 1946 amendment is the uncontradicted fact that, during the ensuing 28 years, until the issuance of NTL–4,

---

1. This legislative history was apparently overlooked by the Department of the Interior when the decision to apply NTL–4 to plaintiff's leases was handed down.

the Department adhered to its earlier practice of not basing royalty on total production at the well. The court is convinced that Congress in amending Section 17 intended to ratify the Department's earlier interpretation of that section, thereby exempting from royalty payments oil and gas produced from and used on the leasehold for production purposes.

Accordingly, the court finds that the decision by the Department of the Interior to require payment of royalty on oil and gas produced on Gulf's three leaseholds and used there for production purposes is arbitrary and contrary to the law as expressed by Section 17 of the Mineral Leasing Act of 1920, as amended, 30 U.S.C. § 226. As a result, NTL–4 is invalid as applied to plaintiff on the facts of this case. Summary judgment is granted in favor of plaintiff.

THEREFORE, IT IS ORDERED that summary judgment be granted in favor of plaintiff and that each side bear its own costs.