HALPERN, J., dissenting: There is adequate ground for the majority’s conclusion that, to qualify for the section 121 exclusion, the taxpayer must sell not only the land on which her principal residence is located but also the principal residence itself. Nevertheless, I think that there is also adequate ground for concluding that petitioners’ sale of the new house qualified for that exclusion. Interpretation Contrary to the Remedial Intent of Section 121(a) The gain exclusion rule of section 121(a) applies if three conditions are met: (1) There must be a sale or exchange (without distinction, sale); (2) the sale must be of “property * * * owned and used by the taxpayer as the taxpayer’s principal residence” (the property use condition), and (3) the property use condition must be satisfied for 2 out of the 5 years ending on the date of sale of the property (the temporal condition). The majority focuses on the second condition (the property use condition) and interprets the condition as being satisfied only if the property sold constitutes, at least in part, “a house or other structure used by the taxpayer as his principal place of abode.” Majority op. p. 10. The majority does not rely on the text of the statute for that interpretation (which text it concludes is ambiguous) but looks to a report of the Committee on Ways and Means, House of Representatives (included as part of H. Rept. 105-148, at 285 (1997), 1997-4 C.B. (Vol. 1) 319, 607, a report of the Committee on the Budget, House of Representatives, accompanying H.R. 2014, 105th Cong., 1st Sess. (1997), which was enacted as the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 788), explaining the committee’s reasons for recommending an amendment to section 121. The committee’s reasons are principally the difficulties a homeowner faces in keeping track of his basis in his home. The committee report language the majority quotes neither addresses the language of the proposed amendment nor purports to exhaust the situations giving rise to the need for the amendment. It provides insufficient grounds to conclude “that Congress intended the section 121 exclusion to apply only if the dwelling the taxpayer sells was actually used as his principal residence for the period required by section 121(a).” Majority op. p. 10 (emphasis added). While the majority is correct that the Supreme Court has said that exclusions from income are to be narrowly construed, Commissioner v. Schleier, 515 U.S. 323, 328 (1995) (more precisely, the Court said: “ ‘the default rule of statutory interpretation [is] that exclusions from income must be narrowly construed’” (quoting United States v. Burke, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment))), the Supreme Court has also said that, if the meaning of a tax provision liberalizing the law from motives of public policy is doubtful, then it should not be narrowly construed, Helvering v. Bliss, 293 U.S. 144, 150-151 (1934). With that latter rule of construction in mind, consider a taxpayer whose longtime home is demolished by a natural disaster (a hurricane). The taxpayer lacks insurance. Nevertheless, she rebuilds on the same land (perhaps a bit further from the ocean) and lives in the rebuilt house for 18 months, and then she sells the house and land at a gain. Although the taxpayer satisfies the property use condition, I assume that, nevertheless, under the majority’s analysis, she gets no exclusion because she fails the temporal condition; i.e., she has not lived in the rebuilt house for 2 or more of the last 5 years.[1] I assume further that, if her house had been only damaged (and not demolished), and she repaired it, she would get an exclusion. That seems like an untenable distinction to me.[2] Difficult Interpretative Questions The majority’s interpretation of the property use condition naturally suggests that there is some recognizable difference between remodeling a house and demolishing and rebuilding the house. I assume the majority does not mean to suggest that any remodeling of a home (1) terminates the use of that home as the taxpayer’s principal residence and (2) resets the temporal clock to zero time elapsed. If not, then is there some level of remodeling that does (1) terminate the use of the home as the taxpayer’s principal residence and (2) set the temporal clock to zero? What about a taxpayer who, wanting a bigger house, demolishes the old house (but not the foundation) and constructs a larger (taller) house using the old foundation? Is that remodeling or rebuilding? What about keeping part of the foundation, and expanding horizontally? If that is remodeling, then there may be an easy way for the Court to reach a similar result in the case before us. The parties have stipulated an exhibit, a blueprint, that shows footprints of both the old and the new house. I have examined the exhibit, and the footprints overlap. Might we not conclude that part of the foundation of the old house was incorporated into the new, thus making the case a remodeling case and not a rebuilding case? The majority’s report will undoubtedly raise the kind of remodeling versus rebuilding questions that I have raised. I think that the better course would be to avoid provoking those questions. Disposition of House Followed by Sale of Land Cases, see, e.g., Bogley v. Commissioner, 263 F.2d 746 (4th Cir. 1959), revg. 30 T.C. 452 (1958), suggest that, and the regulations, sec. 1.121 — 1(b)(3), Income Tax Regs., confirm that, if the principal residence consists of both land and improvements, both a prior sale of the improvements and part of the land and a subsequent sale of the remaining land can qualify under section 121(a). Although petitioners are perhaps at a disadvantage for not arguing it, it does not seem to me to be an impossible stretch to view the demolition of the original house as a sale for zero dollars followed by a later sale of the land. There would then be a ground to apply section 121(a) to the subsequent sale of the land. The demolition/disposition of the original house would give rise to a nondeductible loss, with the basis in the house going to the land. See sec. 280(B). Any gain attributable to the original house and land would be realized on the sale of the land (and new house). That approach requires the allocation of the proceeds between the new house and the land, which apparently petitioners did not think to address. Conclusion I would treat the demolition and reconstruction of petitioners’ house no differently from a renovation. As a second best solution (if I had adequate information), I would treat the original house as being sold for zero dollars upon its demolition and apply section 121 to a subsequent sale of the land (and new house). Wells, Goeke, Kroupa, and Holmes, JJ., agree with this dissent. Under the facts assumed, the destruction of the original house does not result in the conversion of the house into similar property or into money. See sec. 1033(a). Therefore, the rebuilt house is not property acquired after an involuntary conversion, and there would be no tacking of the use and period of occupancy of the original house onto the rebuilt house for purposes of sec. 121. See sec. 121(d)(5)(C). It is no answer to that criticism to say, as Judge Cohen does, that it is not the Court’s job to anticipate and decide cases that are not yet before it. We are a national court that treats its own cases as precedent until we overrule ourselves by action of the Court Conference. This case (and my arguments) have been before the Court Conference. We should recognize, as no doubt the Commissioner and taxpayers will, the weight that the analysis in this case will carry in similar situations under principles of stare decisis.